1 JOHNSON & WEAVER, LLP
Brett M. Weaver, Esq. (SBN 204715)
2 BrettW@johnsonandweaver.com
600 West Broadway, Suite 1540
3 San Diego, CA 92101
Telephone: (619) 230-0063
4 Facsimile: (619) 255-1856

5 Attorneys for Plaintiff
GIZMO BEVERAGES, INC.
6

7

8 **UNITED STATES DISTRICT COURT**

9 **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GIZMO BEVERAGES, INC., a Delaware corporation, | Case No.: 2:17-cv-4431 |
| Plaintiff, | **COMPLAINT FOR:** |
| v. | **1. TRADEMARK INFRINGEMENT**<br>**2. CYBERPIRACY; and**<br>**3. CONVERSION** |
| DON L. PARK, an individual, DANIEL PARK, an individual, and RAMBLEWOOD HOLDINGS, LTD., a British Virgin Islands corporation, | |
| Defendant. | **DEMAND FOR JURY TRIAL** |

Plaintiff Gizmo Beverages, Inc. (Gizmo), based on its own information and belief, and upon the investigation of its attorneys, alleges as follows.

1
COMPLAINT

# I.
# Introduction

1. This is a civil action against Defendants Don L. Park, Daniel Park, and Ramblewood Holdings Ltd. (collectively Defendants) for Trademark Infringement and Cyberpiracy under the Lanham Act 15 U.S.C. § 1051, et seq., and Conversion under California common law.

# II.
# Parties

2. Gizmo is a Delaware corporation with its principal place of business located in Tempe, Arizona. Gizmo is, and was at all relevant times, qualified to do business in California.

3. Don L. Park (a.k.a. Dong Sung Park) is Gizmo's former Chairman and one of its largest shareholders (either personally or through his various trusts). Don Park is, and at all relevant times was, a California citizen domiciled in Orange County, California.

4. Daniel Park is Don Park's cousin. Daniel Park is, and at all relevant times was, a California citizen domiciled in Orange County, California.

5. Ramblewood Holdings Ltd. (Ramblewood) is a British Virgin Islands Corporation. Although it purports its principal place of business is located in Los Angeles, it does not appear the California Secretary of State has qualified it to conduct business in this State. Park is the Chairman and majority owner of Ramblewood.

6. In doing the acts and transactions alleged in this complaint, Defendants aided & abetted each other by knowingly, and willingly providing substantial assistance to one other.

7. In doing the acts and transactions alleged in this complaint, Defendants conspired with each other by mutually agreeing to act in concert to accomplish a

common and unlawful plan, and one or all of them committed an overt act in furtherance of their plan.

8. In connection with the acts and transactions alleged in this complaint, Defendants were the alter egos of each other because they influenced and governed each other with a degree of unity of interest and ownership to the point the difference between individuality and separateness ceased to exist. Adhering to the fiction that the Defendants have a separate existence would sanction a fraud and promote injustice.

## III.

## Jurisdiction and venue

9. This Court has subject-matter jurisdiction over Gizmo's Lanham Act claims, under 15. U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(c).

10. This Court has subject-matter jurisdiction over Gizmo's state-law claim for conversion under 15 U.S.C. § 1332 because Gizmo is a citizen of the British Virgin Islands, the Defendants are all citizens of California, and the amount in controversy is greater than $75,000.

11. This Court has supplemental jurisdiction over Gizmo's pendant state-law claim under 28 U.S.C § 1367 because Gizmo's state-law claim is integrally interrelated with Gizmo's federal claims and arise from a common nucleus of operative facts such that the administration of Gizmo's state-law claim with its federal claims furthers the interest of judicial economy.

12. This Court has personal jurisdiction over each Defendant because each Defendant is a citizen of California.

13. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this judicial district and the acts giving rise this action took place in this district.

# IV.

# Facts

14. In approximately 1996, a Scottish inventor named Bernard Frutin invented the Gizmo Closure and Delivery Device (the Device). Basically, the Device is a closure (i.e. bottle cap) that stores fresh ingredients inside a nitrogen-pressurized, oxygen-depleted chamber. This keeps the ingredients sealed and fresh without preservatives, protects them from oxidation, and prevents harmful exposure to UV light. When the Device is twisted, the ingredients are propelled from the chamber and instantly mix with the liquid inside the bottle. The Gizmo has potentially limitless applications, including use in flavored waters, alcoholic and non-alcoholic beverages, dairy products, cosmetics, and household, agricultural, pharmaceutical, and specialty products.

15. In April 2001, Frutin, through his company Rocept Lusol Holdings, Ltd (Rocept Lusol) filed a trademark application with the European Union's Intellectual Property Office for the mark "Gizmo." The EUIPO registered that mark to Rocept Lusol in March 2003.

16. In November 2007, Rocept Lusol registered the domain name www.gizmoclosures.com with the International Corporation for Assigned Names and Numbers (ICANN).

17. At some point before 2010, Rocept Lusol licensed or otherwise transferred the "Gizmo" trademark and www.gizmoclosures.com domain name to another company owned by Frutin called Gizmo Packaging Limited (GPL). GPL also owns the Device's global patent rights.

18. In June 2010, one of the Defendants registered the domain name www.gizmoclosure.com (i.e. www.gizmoclosures.com without the "s"). Ramblewood then created at least three different email addresses using this domain name:
(1) don.park@gizmoclosure.com; (2) Daniel.park@gizmoclosure.com and
(3) info@gizmoclosure.com.

19.  A few months later, in September 2010, Ramblewood entered into a Master License Agreement with GPL.  Under the Master License, Ramblewood agreed to pay GPL a consulting fee, minimum payments, and royalties.  In exchange, GPL granted Ramblewood an exclusive worldwide license to use the Device's various patents.  The Master License also licensed GPL's Intellectual Property to Ramblewood, including the right to use the registered trademark "Gizmo" and the registered domain name "www.gizmoclosures.com."

20.  In early 2011, Don Park began working with a beverage executive named Walter Apodaca on several different beverage concepts to showcase the Device to potential investors and companies interested in using the Device for their products.  They eventually settled on a line of ready-to-drink iced teas called "Tea Of A Kind" (TOAK).

21.  Shortly thereafter, Don Park hired his cousin, Daniel Park, to help him and Apodaca with various administrative tasks. One such task was to open an account with GoDaddy.com in order to register a domain name for TOAK.  In May 2011, Daniel Park opened a GoDaddy account and registered the domain name "www.teaofakind.com" with ICANN.  Daniel Park listed himself as the "Registrant Contact," "Admin Contact," and "Tech Contact" for www.teaofkind.com.  He is still listed as the contact person today.

22.  In July 2011, Don Park formed Gizmo as a Delaware Limited Liability Company.  Originally, Park was Gizmo's only member.  A few months later, Apodaca and two other individuals became members as well.  Park and Apodaca were named Gizmo's managing members and they were the only two members who received Class A Units, which came with various preferred rights and privileges.

23.  In January 2012, Ramblewood and Gizmo entered into a Sublicense Agreement under which Gizmo obtained Rocept Lusol's right to use the Device's global patents for consumer beverages (the Beverage Sublicense).

24. In August 2012, Gizmo commercially launched TOAK. A few months later, on November 27, 2012, the United States Patent and Trademark registered "Tea Of A Kind" as Gizmo's valid, protectable trademark.

25. In December 2013, Gizmo converted into a Delaware Corporation. Park's Class A units became Class A Shares, which like before, had various preferred rights and privileges, including ten-to-one voting rights over the Class B Shares.

26. By January 2016, Ramblewood was approximately $400,000 behind in paying GPL what it owed under the Master License. Thus, on or about January 18, 2016, GPL terminated the Master License.

27. GPL subsequently offered to license the Device's rights directly to Gizmo on two conditions. First, Gizmo had to pay GPL the approximately $400,000 owed by RHL. Second, Park could no longer have any management role with, or ability to control, Gizmo. Park—who was still one of Gizmo's largest shareholder and, thus, had the most to lose if Gizmo lost its rights to the Device—agreed to these conditions.

28. Accordingly, on March 24, 2016, Gizmo filed an Amended and Restated Certificate of Incorporation that eliminated Class A Shares' preferred voting rights.

29. On April 1, 2016, Gizmo entered into a new Master License Agreement with GPL. Under the new agreement, Gizmo now had the right to use the Device's global patents, as well as the trademark "Gizmo", and the domain name www.gizmoclosures.com.

30. Although Gizmo has made repeated demands that he stop, Don Park continues to send and receive emails using his don.park@gizmoclosure.com.

31. Further, Gizmo is aware that, after Don Park ceased to have any role in managing the company, at least two companies interested in using the Device for their products sent inquires to www.info@gizmoclosure.com. Although Don Park forwarded these inquires to Gizmo, there is no way for Gizmo to know whether he has received any other inquires that he has not forwarded to the company. Indeed, Gizmo is informed and believes that Don Park recently offered to sell someone the

Device's patent rights for pharmaceuticals despite the fact Ramblewood no longer has any rights to them.

32. In addition, despite repeated requests, Don Park and Daniel Park refuse to turn over the log-in information for Gizmo's GoDaddy.com account. As a result, they control the domain name www.teaofakind.com. Thus, they have the ability to transfer the domain name to themselves or sell it to a third party. They also have the ability to terminate the account all together, which would among other things, prevent Gizmo from using www.teaofakind.com for marketing purposes and its employees from using their current "@teaofakind.com" email address to communicate with third parties.

## V.

## CLAIMS FOR RELIEF

### First

Against all Defendants for Trademark Infringement

33. Gizmo re-alleges and incorporates by reference all the preceding allegations into this claim for relief.

34. The domain name www.gizmoclosures.com is a valid, protectable trademark.

35. GPL owns the trademark rights to www.gizmoclosures.com. Gizmo has the exclusive right to use that mark under its Master Licenses agreement with GPL.

36. Defendants' had both actual and constructive knowledge that Gizmo held the exclusive rights to use these trademarks before infringing on that mark.

37. Defendants' infringing use of the www.gizmoclosure.com is likely to cause, and has caused, confusion, mistake or deception as to the affiliation, connection or association of www.gizmoclosure.com with Gizmo, in violation of 15. U.S.C. 1125(a)(1)(A).

38. Defendants adopted and continue to use www.gizmoclosure.com with full knowledge of Gizmo's superior rights, and with full knowledge that their infringing

use of www.gizmoclosure.com was intended to cause confusion, mistake or deception.

39. Defendants' actions, if not enjoined, will continue. Gizmo has suffered and continues to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with www.gizmoclosures.com and injury to Gizmo's business. Thus, Gizmo is entitled to injunctive relief under 15 U.S.C. § 1116.

## Second

### Against all Defendants for Cyberpiracy

40. Gizmo re-alleges and incorporates by reference all the preceding allegations into this claim for relief.

41. The domain name www.gizmoclosures.com is a valid, protectable trademark. Gizmo has the exclusive right to use this trademark under its Master License with GPL.

42. Gizmo owns the domain name www.teaofakind.com, which is a registered trademark with the USPTO.

43. Don Park and Ramblewood both had actual and constructive knowledge that Gizmo held the exclusive rights to use these domains before infringing on them.

44. Don Park and Ramblewood adopted and continue to use the domain names in bad faith.

45. Defendants have used, and continue to use, domain names that are identical or confusingly similar to Gizmo's distinctive trademarks in violation of 15. U.S.C. § 1125(d)(1)(A).

46. Defendants' actions, if not enjoined, will continue. Gizmo has suffered and continues to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with

www.gizmoclosures.com and injury to Gizmo's business. Thus, Gizmo is entitled to injunctive relief under 15 U.S.C. § 1116.

### Third

### Against all Defendants for Conversion

47. Gizmo re-alleges and incorporates by reference all the preceding allegations into this claim for relief.

48. Defendants intentionally and substantially interfered with Gizmo's property by preventing Gizmo for having full access to www.teaofakind.com by refusing to provide Gizmo with log-in information for Gizmo's GoDaddy account.

49. Gizmo did not consent to Defendants denying it full access to www.teaofakind.com

50. Gizmo was harmed by Defendants' conversion of Gizmo's property.

51. Park and Daniel Park's conduct was a substantial factor in causing Gizmo's harm.

## VI.

## Prayer for relief

WHEREFORE, Gizmo prays for an Order and Judgment as follows:

1. Entry of an order (on a preliminary and permanent basis) requiring that Defendants and their officers, agents, servants, employees, owners and representatives, and all other persons, firms or corporations in active concert or participation with them, be enjoined and restrained from:

    a. Using in any manner the Gizmo mark, or any name, mark, or domain name that wholly incorporates the Gizmo mark or is confusingly similar to this mark, including www.gizmoclosure.com; and

    b. Doing any act or thing calculated or likely to cause confusion or mistake in the minds of members of the public or prospective customers of Gizmo's products or services as to the source of the

products or services offered for sale, distributed, or sold, or likely to deceive members of the public, or prospective customers, into believing that there is some connection between Defendants and Gizmo.

2. Directing Defendants to transfer to Gizmo (at no cost to Gizmo) all domain names that contain or consist of Gizmo's marks, including but not limited to www.gizmoclosure.com and www.teaofakind.com;

3. Awarding Gizmo compensatory damages in an amount to be determined by trial;

4. Awarding Gizmo, to the extent permitted by law, pre-judgment interest, costs and legal fees; and

5. Any other relief that may be justified based upon the facts and the law.

## VII.
## Jury demand

Under Rule 38, Gizmo demands a jury trial on all issues triable of a right by jury.

Dated: June 14, 2017                           JOHNSON & WEAVER, LLP

By: s/ Brett M. Weaver
BRETT M. WEAVER
600 West Broadway, Suite 1540
San Diego, CA  92101
Telephone: (619) 230-0063
Facsimile: (619) 255-1856
E-mail: BrettW@johnsonandweaver.com

Attorneys for Plaintiff
GIZMO BEVERAGES, INC.